## SCHWARTZENBERG v. MAYERSON.

(Circuit Court of Appeals, Sixth Circuit. November 7, 1924.)

No. 3981.

**1. Accord and satisfaction ⊝11(1)—Compromise and settlement ⊝5(2)—Creditor held estopped to deny that check was accepted in full payment of disputed claim.**

Where accounts of plaintiff against defendant were in dispute, and defendant gave plaintiff's agent a check indorsed on the face "In full to date," which plaintiff, with knowledge of the indorsement, accepted and cashed, it was estopped to assert that it was not received in full satisfaction.

**2. Accord and satisfaction ⊝1—Compromise and settlement ⊝2—Place of contract.**

Where defendant gave to plaintiff's agent in Cleveland, Ohio, a check on a Cleveland bank in settlement of disputed claims, the contract of settlement was an Ohio contract, though plaintiff resided in Canada, and there accepted and deposited the check.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; Paul Jones, Judge.

Action at law by Lizzie Mayerson, doing business as the L. Mayerson Company, against Fred Schwartzenberg. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

A. O. Dickey, of Cleveland, Ohio (Calfee, Fogg & White and A. O. Dickey, all of Cleveland, Ohio, on the brief), for plaintiff in error.

John A. Hadden, of Cleveland, Ohio (Griswold, Green, Palmer & Hadden, of Cleveland, Ohio, on the brief), for defendant in error.

Before DONAHUE and MACK, Circuit Judges, and SATER, District Judge.

DONAHUE, Circuit Judge. Schwartzenberg gave to the L. Mayerson Company an order for fish, to be shipped by express on Friday of each week in carload lots of 100 boxes, of 100 pounds each. The first carload lot, containing 152 boxes, of a total weight of 20,320 pounds, was shipped by express in car No. 5547, and reached Cleveland the night of June 18th. The fish were then in bad condition. Schwartzenberg ordered the car to be iced and immediately proceeded to remove and freeze the fish. This effort to save the fish resulted in substantial failure, and upon order of the food inspector of the city of Cleveland 18,290 pounds of this shipment were destroyed. Shortly after this another 1,500 pounds of fish received from the Mayerson Company were required to be destroyed, but the evidence is not clear whether these fish were part of the same carload. Schwartzenberg refused to pay the draft covering the invoice price of this carload of fish, and also wrote a letter, under date of June 20th, that he could not "pay out any money for bad fish." On the same date he telegraphed the Mayerson Company: "Do not ship any more white fish. Express charges make price too high." Before this telegram was received another carload was shipped by express in car No. 5597, which carload contained 199 boxes, aggregating 29,690 pounds. Upon the arrival of this car, the express company notified the consignor that the shipment was refused. After the exchange of some telegrams between the Mayerson Company and Schwartzenberg, in which Schwartzenberg refused to handle this car for the account of the Mayerson Company, the Mayerson Company wired the American Express Company: "Please ice car and rush same to Buffalo cold storage."

About the same time, or a little later, the Mayerson Company made several small shipments of fish to Schwartzenberg, amounting in the aggregate to $518.69. Schwartzenberg claimed these fish were delayed in shipment and that a substantial amount of them were spoiled. Upon refusal of Schwartzenberg to pay for either of these cars or for these smaller shipments, Charles Smithen, manager of the Mayerson Company, came to Cleveland, and Schwartzenberg gave him a check for $518.69, on the face of which was indorsed: "In full to date." This check was taken by Smithen to Winnipeg, Manitoba, where the home office of the Mayerson Company is located, and there deposited with the bank to the credit of the Mayerson Company. Before this check was deposited, the Mayerson Company wrote Schwartzenberg, under date of September 6th: "We notice that you have marked this check 'in full to date,' but would say we cannot accept this check 'in full to date,' but simply accept it in full for payment of local shipments."

In reply Schwartzenberg, on September 11th, wrote a letter and mailed it to Mayerson Company in an envelope bearing the proper postage and address, as follows: "This check was given to Mr. Smithen with the understanding that it was in full payment of all claims, and was so marked and accepted by him. If you do not wish to accept the check as stated thereon, you can

return the same, as it is entirely a donation; none of the fish brought express charges, as they were too poor, and I hold the city inspector's receipt for most of them that they were dumped." The Mayerson Company denied having received this letter.

Some few days after writing to Schwartzenberg, the Mayerson Company cashed this check. This action was commenced by the Mayerson Company to recover from Schwartzenberg the full invoice price of the two carloads of fish shipped on June 13th and 19th, which the plaintiff averred were received and accepted by Schwartzenberg. To this petition the defendant filed an answer, averring that the fish shipped in car No. 5547 on June 13, 1919, were wholly unmerchantable and unfit for consumption, and that defendant had refused to accept the same and informed plaintiff of his refusal to do so. That the fish shipped in car No. 5597 were never ordered, purchased or agreed to be purchased by defendant and never delivered, received or accepted by defendant, but were transferred and shipped by the Mayerson Company from Cleveland, Ohio, to Buffalo, N. Y. The defendant also pleaded accord and satisfaction.

There is no conflict in the evidence in reference to the second shipment of fish in car No. 5597. It is admitted that the order given by the defendant to plaintiff was for 100 boxes containing approximately 100 pounds each. This carload contained 199 boxes, aggregating 29,690 pounds, almost three times the amount of fish the defendant had ordered to be shipped in any one week. It is also equally clear that the defendant refused to accept this second carload, and also refused to handle the same for the account of the plaintiff, and that after such refusal, plaintiff ordered the car iced and forwarded to Buffalo. Under this state of the proof the jury should have been instructed that the plaintiff could not recover from the defendant all or any part of the invoice price of the second car.

[1] The defendant offered substantial evidence tending to prove that there was a bona fide dispute in reference to the smaller shipments and that, by reason of the fact that they were delayed in shipping and that the fish were not in good condition when they reached Cleveland, he had refused to pay for the same; that he thereupon made the proposition to Mr. Smithen, representing the plaintiff, that he would pay the full amount claimed for these smaller shipments and release or assign to the plaintiff his claim against the express company for express charges paid on the first car, amounting to about $1,200, if the plaintiff would release him from all further liability thereunder; that Mr. Smithen, after attempting to get into communication by wire with the home office, finally agreed to accept the defendant's proposition and thereupon the defendant gave him a check indorsed "In full to date." It is true that Mr. Smithen testified that there was no dispute in reference to the smaller shipment, and that he did not know, at the time the check was given to him, that it contained the indorsement across its face "In full to date," but Mayerson Company did know it was so indorsed before it cashed the same, and, although it wrote Schwartzenberg that it would not accept the check upon these terms, nevertheless it did accept the same with this indorsement thereon, and deposited it in the bank to its credit before it received any reply from the defendant to its letter rejecting the check in full payment. Under the admitted facts and circumstances of this case, we do not think the plaintiff can now be heard to say that the check was not accepted by it in full satisfaction of all claims against the defendant, accruing prior to that date. Seeds Grain & Hay Co. v. Conger, 83 Ohio St. 169, 93 N. E. 892, 32 L. R. A. (N. S.) 380.

[2] It is claimed however, that if there was any settlement of these disputed claims, the contract of settlement was a Canadian contract and therefore governed by the law of Canada. No evidence was offered tending to prove the law of Canada in reference to settlements of this character. However that may be, this contract of accord and satisfaction was made in Cleveland, Ohio. The check was issued upon a Cleveland bank, and delivered to the manager of the Mayerson Company in Cleveland, Ohio, and was later paid by the Cleveland bank upon which it was drawn. This was clearly an Ohio contract, and the fact that the check was later deposited by the plaintiff to its credit in a Canadian bank does not make it a Canadian contract. Under this state of proof the court should have sustained a motion for a directed verdict.

For the reasons stated, the judgment is reversed, and this cause remanded for further proceedings in accordance with this opinion.